**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------X
UNITED STATES OF AMERICA          :
                                  :
                                  :     No. 16 Cr. 576 (JFK)
     -against-                    :     No. 20 Civ. 1493 (JFK)
                                  :
                                  :     **OPINION & ORDER**
CHARLES KERRIGAN,                 :
                                  :
                    Defendant.    :
-----------------------------------X

APPEARANCES

FOR DEFENDANT CHARLES KERRIGAN:
     Bernard V. Kleinman, LAW OFFICE OF BERNARD V. KLEINMAN,
     PLLC

FOR THE UNITED STATES OF AMERICA:
     Benet J. Kearney
     U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

     Before the Court is Defendant-Petitioner Charles Kerrigan's

("Kerrigan") motion to vacate, set aside, or correct his

sentence pursuant to 28 U.S.C. § 2255(a).  The Government

opposes the motion.  For the reasons set forth below, Kerrigan's

motion is DENIED.

     **I. Background**

     Unless otherwise noted, the following is taken from the

parties' submissions, Kerrigan's Presentence Investigation

Report ("PSR"), (ECF No. 221), and the transcripts of the plea

hearing ("Plea Hearing"), (ECF No. 194), and sentencing hearing

("Sentencing Hearing"), (ECF No. 239).[1]  In ruling on Kerrigan's request, the Court has considered the arguments advanced in his motion ("Motion"), (ECF No. 302), his memorandum of law in support ("Memorandum in Support"), (Docket No. 20 Civ. 1493, ECF No. 3), his declaration in support ("Declaration"), (Docket No. 20 Civ. 1493, ECF No. 6), the Government's memorandum in opposition ("Memorandum in Opposition"), (ECF No. 327), Kerrigan's reply brief ("Reply"), (ECF No. 328), and affidavits submitted by Kerrigan's trial counsel, (ECF No. 350), and appellate counsel, (ECF No. 349).

Over the course of two days in April 2016, Kerrigan and three other individuals burglarized an HSBC bank in Brooklyn, New York.  (PSR ¶ 22.)  Accessing the bank's roof from an adjacent building, the burglars used oxygen and acetylene torches to cut through the roof and open the bank's vault.[2]  (Id.)  Approximately six weeks later, Kerrigan and his

---

[1] Unless otherwise noted, all docket entry citation in this Opinion and Order refer to the criminal docket, No. 16 Cr. 576 (JFK).

[2] Although the HSBC bank is located in Brooklyn, venue was proper in this District because a co-conspirator drove the proceeds of the burglary across the Verrazano Bridge.  See United States v. Kirk Tang Yuk, 885 F.3d 57, 71–72 (2d Cir. 2018) (evidence sufficient for venue where defendant "drove over the Verrazano-Narrows Bridge from Staten Island to Brooklyn, passing . . . through the jurisdiction of the Southern District of New York"); see also 18 U.S.C. § 2113(b) (defining the crime of bank robbery as "[w]hoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value . . . belonging to, or in the care, custody, control, management, or possession of any bank . . ." (emphasis added)).

associates struck again, burglarizing a Maspeth Federal Savings
Bank in Queens, New York.  (Id. ¶ 45.)  In total, the burglars
stole approximately $726,000 in cash and an estimated
$20,430,755 in valuables held in safety deposit boxes.  (Id. ¶
67.)

On July 26, 2016, Kerrigan and his co-conspirators were
arrested in connection with the burglaries.  At the time of his
arrest,  Kerrigan was charged by complaint with two counts of
bank burglary, in violation of 18 U.S.C. § 2113(a), and one
count of conspiracy to commit bank burglary, in violation of 18
U.S.C. § 371.  (ECF No. 1.)  Following his initial appearance,
Kerrigan was released on bail subject to various conditions.
(ECF No. 14.)  As relevant here, before Kerrigan was released,
he signed an advice of penalties and sanctions form, which
explicitly warned him that (1) he could be subject to an
additional consecutive sentence if he committed an additional
offense while on pre-trial release, and (2) retaliating or
attempting to retaliate against a witness is a separate crime
that carries a maximum sentence of ten years' incarceration.
(Id.)  The initial indictment in this case, S0-16-CR-576 (LTS),
was filed on August 25, 2016, and charged Kerrigan with two
counts of bank burglary, in violation of 18 U.S.C. § 2113(a),
two counts of bank theft, in violation of 18 U.S.C. § 2113(b),

and one count of conspiracy to commit bank burglary and bank theft, in violation of 18 U.S.C. § 371. (ECF No. 22.)

On October 15, 2017, while on bail, Kerrigan called his then girlfriend, Heather Kornhaber ("Kornhaber"), and demanded that she meet him in person in order to talk about his case. (PSR ¶ 65.) Kornhaber initially attempted to delay the meeting but ultimately agreed to meet Kerrigan after he threatened to drive directly to her apartment. (Id.) The following day, Kornhaber traveled to Kerrigan's apartment with her nine-year-old son. (Id.) Shortly after they arrived, Kerrigan confronted Kornhaber and accused her of "ratting" on him. (Id.) When she denied the accusation, Kerrigan attacked her, punching her repeatedly and chocking her in front of her son. (Id.) During the attack, Kerrigan accused Kornhaber of cooperating with the Government and threatened to kill her and her son. (Id.) Kornhaber's son ultimately called 911. (Id.) When the police arrived, Kerrigan was arrested and Kornhaber was taken to the hospital. (Id.)

On October 30, 2017, Kerrigan was charged in a six-count superseding indictment ("Indictment") with one count of conspiracy to commit bank burglary and bank theft, in violation of 18 U.S.C. § 371 (Count one); two counts of bank burglary, in violation of 18 U.S.C. § 2113(a) (Counts Two and Four); two counts of bank theft, in violation of 18 U.S.C. § 2113(b) (Count

4

Three and Five); and one count of witness retaliation while on pretrial release, in violation of 18 U.S.C §§ 1513(b)(2) and 3147 (Count Six).[3]

### A. Kerrigan's Guilty Plea

On November 2, 2017, the Government sent Kerrigan's attorney a Pimentel letter ("Pimentel Letter") setting forth the Government's initial position regarding the application of the United States Sentencing Guidelines ("Guidelines") to Kerrigan's case. (Mem. in Oppo. at 5.) In the Pimentel Letter, the Government stated that Kerrigan's applicable Guidelines offense level was 30. (PSR ¶ 11.) The Government's calculation was based, in part, on the total loss amount from the two burglaries and the Government's determination that Kerrigan did not qualify for a downward adjustment for acceptance of responsibility under to U.S.S.G. § 3C1.1 due to his assault on Kornhaber. (Id.) With an offense level of 30 and a Criminal History Category I, the Pimentel Letter stated that Kerrigan's Guidelines sentence range was 97 to 121 months' imprisonment.

On December 11, 2017, Kerrigan pled guilty, without the benefit of a plea agreement, to all six counts in the Indictment

---

[3] The October 30, 2017, Indictment was the third superseding indictment filed in this case. The first superseding indictment, S1-16-CR-576 (LTS), was filed on October 5, 2016. (ECF No. 42.) The second superseding indictment, S2-16-CR-576 (LTS), was filed on February 26, 2017. (ECF No. 65.)

before Judge Katherine B. Forrest.[4]  Before accepting his guilty
plea, Judge Forrest conducted a plea allocution of Kerrigan.  At
the beginning of the allocution, Kerrigan stated that his mind
was clear and that he understood the purpose of the Plea
Hearing.  (Plea Hearing Transcript ("Plea Tr.") at 7:21-25.)  In
response to Judge Forrest's questioning, Kerrigan confirmed that
he had received a copy of the Indictment and that he "had a
chance to read through it" and discuss it with his attorney.
(Id. at 3:19-21.)  He additionally confirmed that he had "enough
time to speak with [his counsel] about [his] case and any
defenses that [he] may have" and stated that he was "satisfied
with [his counsel's] representation."  (Id. at 8:21-9:2.)  Judge
Forrest also informed Kerrigan of the various constitutional
rights he would forgo if he were to plead guilty and confirmed
that he understood those rights, as well as the penalties he
faced.  (Id. at 9:1-26:2.)  Regarding the possibility of credit
for acceptance of responsibility, the Government noted that even
if Kerrigan had not "engaged in the obstructive" assault of
Kornhaber, it would still oppose a two-level reduction of
Kerrigan's offense level based on his failure to assist the
Government in recovering the proceeds of the burglaries.  (Plea

---

[4] This case was originally assigned to Chief Judge Laura T. Swain and
was reassigned to Judge Forrest on September 11, 2017.  (See Notice of
Case Reassignment, dated Sept. 11, 2017.)  The case was reassigned to
this Court on September 14, 2018.  (See Notice of Case Reassignment,
dated Sept. 14, 2018.)

Tr. at 29:18-30:7.)  Judge Forrest, in response, reminded
Kerrigan that the court, not the Government, was responsible for
calculating the applicable Guidelines range and determining
whether a downward departure should be granted.  (Id. at 30:8–
16.)

　　　After confirming that Kerrigan understood the implications
of a guilty plea, Judge Forrest directed the Government to set
forth the elements of the various offenses charged in the
Indictment.  (Id. at 31:10–11.)  With respect to the witness
retaliation charge contained in Count Six, the Government stated
that it must prove that "the defendant knowingly engaged in
conduct or threaten to engage in conduct that caused bodily
injury to another person; that the defendant had the intent to
retaliate against someone for information that was provided to a
law enforcement officer; [and] . . . that the information
provided to the law enforcement officer relate[] to a federal
offense."  (Id. at 33:12–17.)  Judge Forrest then asked Kerrigan
to state on the record "what [he] did that makes [him] think
[he's] guilty of Counts One through Six."  (Id. at 34:2–4.)  In
response, Kerrigan admitted to conspiring to commit and
committing the two burglaries.  (Id. at 34:12–18.)  Regarding
Count Six, Kerrigan stated "[o]n October 16, 2017, while on
pretrial release, I argued with my girlfriend Heather Kornhaber
. . . . [a]nd assaulted her and called her a government

informant." (Id. at 34:18-25.)  In response to additional
questioning from Judge Forrest, Kerrigan admitted that at the
time of the assault, he believed that Kornhaber was cooperating
with the Government in connection with "the bank robberies."
(Id. at 35:3.)  Kerrigan then pled guilty to each of the six
counts.  Judge Forrest accepted Kerrigan's plea, finding that he
understood his rights, including "[his] right to go to trial,
[and his] right to a lawyer," and that based upon his
allocution, he was "in fact guilty of each of the crimes charged
in Counts One through Six."  (Id. at 39:8-10.)

### B. Kerrigan's Sentencing

Prior to sentencing, the United States Probation Department
provided Kerrigan and the Government with a Pre-Sentence Report
("PSR") setting forth its analysis of the Guidelines.  As
relevant here, the PSR's Guidelines calculation differed from
the calculation contained in the Pimentel Letter in three
respects.  First, due to the receipt of additional claims from
victims, the PSR indicated that the total loss amount was "at
least $20,430,755.38," resulting in an additional two-level
increase in the offense level calculation for Counts Three and
Five.  (PSR at p. 31.)  Second, the PSR included an additional
three-level increase in offense level based on the fact that
Kerrigan was on pretrial release when he assaulted Kornhaber.
(Id. ¶¶ 89, 97.)  Finally, the PSR applied a three-level

reduction to Kerrigan's total offense level for acceptance of responsibility.  (Id. ¶¶ 104-05).  In total, the PSR calculated an offense level of 32.  (Id. ¶ 106.)

In its written sentencing submission, the Government reiterated its position that Kerrigan should not receive credit for acceptance of responsibility because of (1) "his obstructionist conduct in assaulting a woman whom he believed was cooperating with the Government[,]" and (2) "his refusal to account for the property that was stolen from the bank during the burglaries."  (Government Sentencing Submission, ECF No. 220 at 3.)  The Government additionally argued that an upward departure was warranted pursuant to U.S.S.G. § 5k2.2 because "[t]he Guidelines range . . . fails to reflect the bodily injury that resulted from [Kerrigan's] assault of [Kornhaber]."  (Id. at 7.)  On April 10, 2018, Judge Forrest entered an order advising the parties that she was "considering an upwards departure, pursuant to § 5K2.2, or an upwards variance, under 18 U.S.C. [§] 3553(a)."  (ECF No. 231.)

Kerrigan's Sentencing Hearing took place before Judge Forrest on April 11, 2018.  At the outset of the hearing, the Government requested that the loss amount contained in the PSR be revised to reflect the receipt of additional claims from victims.  (Sentencing Hearing Transcript ("Sent. Tr.") at 11:21-12:3.)  Judge Forrest asked Kerrigan's attorney, Patrick V.

Parrotta ("Parrotta"), if he objected to the revision.  (Id. at
12:5.)   Parrotta responded "[n]o" and stated that he had no
other objections to the PSR.   (Id. 12:6.)   Judge Forrest then
turned to the Guidelines calculation.   As for Kerrigan's
acceptance of responsibility, Judge Forrest concluded that a
reduction under U.S.S.G. § 3E.1.1 was not warranted because
Kerrigan had failed to assist "in [the] recovery of stolen
items" and "attempt[ed] to interfere with the prosecution of
[the] offense" by assaulting Kornhaber and her son.   (Id. at
17:20-18:23-24.)   Based on her calculations, Judge Forrest
concluded that Kerrigan's offense level was 34, resulting in an
applicable Guidelines range of 151 to 188 months' imprisonment.
(Id. at 26:2-6.)   Judge Forrest then granted the Government's
request for an upward departure of 12 months due to the serious
physical injuries inflicted by Kerrigan.   (Id. at 43:1-12.)   In
support of this conclusion, Judge Forrest noted that the
Guidelines did not adequately reflect the physical injuries
suffered by Kornhaber, including a broken nose, black eye, and
torn breast implant, and the physical and psychological injuries
suffered by her son.   (Id. at 44:1-25.)   After hearing from the
parties, Judge Forrest discussed the sentencing factors
contained in 18 U.S.C. § 3553(a) and imposed a sentence of 200
months' imprisonment, followed by three years of supervised
release.   (Id. at 47:5-8.)

### C. Kerrigan's Post-Conviction Motions

On May 1, 2018, Kerrigan appealed his conviction to the Second Circuit.  With the assistance of new counsel, Kerrigan argued on appeal that his sentence was both procedurally and substantively unreasonable.  In support of his procedural challenge, Kerrigan argued that the district court erred in (1) denying an adjustment for acceptance of responsibility, (2) granting an upward departure, and (3) grouping multiple counts prior to applying a three-level enhancement.  United States v. Kerrigan, 787 F. App'x 767, 769 (2d Cir. 2019) (summary order). As for the substance of his sentence, Kerrigan argued that his sentence was substantively unreasonable because of an unwarranted sentencing disparity between his sentence and the sentences of his co-defendants.  Id.  The Second Circuit rejected Kerrigan's claims and affirmed his judgment of conviction in its entirety.  Id.

On March 10, 2020, with the assistance of a new attorney, Kerrigan filed the instant Motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255(a).  The Government filed its Memorandum in Opposition to Kerrigan's Motion on June 9, 2020.  Kerrigan filed his Reply on July 7, 2020.  Due to the nature of Kerrigan's claims, the Court ordered his trial counsel and appellate counsel to submit affidavits in response to the Motion.  (ECF No. 348.)  The Court received the

11

affidavits on March 20, 2022, (Affidavit of Matthew Galluzzo

("Galluzzo Aff."), ECF No. 349), and March 25, 2022, (Affidavit

of Patrick Parrotta ("Parrotta Aff."), ECF No. 350).  The Motion

is now fully briefed and ready for decision.

## II. Applicable Law

Under 28 U.S.C. § 2255(a), a federal prisoner may

collaterally challenge his sentence on the ground that "the

sentence was imposed in violation of the Constitution or laws of

the United States."  To obtain relief under § 2255, a petitioner

must establish "a constitutional error, a lack of jurisdiction

in the sentencing court, or an error of law or fact that

constitutes 'a fundamental defect which inherently results in a

complete miscarriage of justice.'"  United States v. Bokun, 73

F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368

U.S. 424, 428 (1962)).

Pursuant to § 2255(b), a district court is required to hold

an evidentiary hearing "[u]nless the motion and the files and

records of the case conclusively show that the prisoner is

entitled to no relief[.]"  28 U.S.C. § 2255(b).  The Second

Circuit, in turn, has interpreted this provision to require a

hearing where the petitioner pleads a "'plausible' claim of

ineffective assistance of counsel."  Raysor v. United States,

647 F.3d 491, 494 (2d Cir. 2011) (quoting Puglisi v. United

States, 586 F.3d 209, 213 (2d Cir. 2009)).  "It is within the

district court's discretion to determine the scope and nature of a [§ 2255(b)] hearing." Id. (citation omitted.) "'Bald allegations' unsupported by evidentiary facts do not" warrant a hearing. Puglisi, 586 F.3d at 213 (quoting Newfield v. United States, 565 F.2d 203, 207 (2d Cir. 1977)).

## III. Discussion

In the instant Motion, Kerrigan raises four separate grounds for relief. First, he argues that his guilty plea on Count Six was deficient because he was not fully informed of the elements of the witness retaliation charge and there was an insufficient factual basis for his plea. Second, he argues that he was sentenced on Counts Four, Five, and Six in error because "Judge Forrest, on motion of the Government, dismissed" the three counts during the Sentencing Hearing. (Mem. in Supp. at 57.) Third, he argues that his sentence is unconstitutional under the Eighth Amendment. Finally, he argues that his conviction must be vacated because he received constitutionally ineffective assistance from both his trial counsel and appellate counsel. In response, the Government argues that Kerrigan's claims concerning his guilty plea and sentence are procedurally defaulted because he failed to raise them on direct appeal. The Government further argues that Kerrigan's ineffective assistance claims are "refuted by the record" and should be denied. (Mem. in Oppo. at 12.) As explained in greater detail below, the

Court declines to reach the Government's procedural arguments because Kerrigan's various claims fail on the merits.  See Gutierrez-Fernandez v. United States, No. 97 Cr. 1173 (DAB), 2000 WL 1559945, at *4 (S.D.N.Y. Oct. 18, 2000) (declining to reach the merits of the government's procedural bar argument because the § 2255 motion was meritless).  The Court addresses Kerrigan's claims in turn.

### A. Kerrigan's Guilty Plea was Proper

Kerrigan first argues that his guilty plea with respect to Count Six was insufficient because he was never informed of the elements of the offense and his plea allocution did not provide an adequate factual basis for his guilty plea.  Neither claim is supported by the record.

Rule 11 of the Federal Rules of Criminal Procedure "sets forth requirements for a plea allocution and 'is designed to ensure that a defendant's plea of guilty is a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  United States v. Andrades, 169 F.3d 131, 133 (2d Cir. 1999) (citation omitted).  To that end, Rule 11(b)(1)(G) requires that the district court "inform the defendant of, and determine that the defendant understands, . . . the nature of each charge to which the defendant is pleading."  Fed. R. Crim. P. 11(b)(1)(G).  Additionally, "[b]efore entering judgment on a guilty plea," the court "must determine that there

14

is a factual basis for the plea." Id. 11(b)(3).  The district
court must "assure itself simply that the conduct to which the
defendant admits is in fact an offense under the statutory
provision under which he is pleading guilty." United States v.
Garcia, 587 F.3d 509, 514 (2d Cir. 2009) (internal quotation
marks omitted).  This requirement "is designed to protect a
defendant who is in the position of pleading voluntarily with an
understanding of the nature of the charge but without realizing
that his conduct does not actually fall within the charge."
United States v. Murphy, 942 F.3d 73, 85 (2d Cir. 2019) (quoting
United States v. Maher, 108 F.3d 1513, 1524 (1997)).  In
conducting this inquiry, the "court may rely on the defendant's
own admissions, information from the government, or other
information appropriate to the specific case." Andrades, 169
F.3d at 136.

Here, the record demonstrates that Kerrigan's plea with
respect to Count Six complied with the requirements of Rule 11.
First, contrary to Kerrigan's claim that "there was no
discussion as to the elements of the statute[,]" the transcript
of the Plea Hearing demonstrates that the Government, in
response to Judge Forrest's direction, provided a complete and
accurate summary of the elements of 18 U.S.C. §§ 1513(b) and
3147 by stating:

Count Six charges that the defendant engaged in
witness retaliation while on pretrial release. That
crime has six elements, two sets of three elements
each[:] That the defendant knowingly engaged in
conduct or threatened to engage in conduct that caused
bodily injury to another person; that the defendant
had the intent to retaliate against someone for
information that was provided to a law enforcement
officer; . . . that the information provided to the
law enforcement officer related to a federal offense.
With respect to the pretrial release aspect, the
government must prove, first, that the defendant was
released on bail pending trial; second, that the
defendant was notified of the effect of committing an
offense while on pretrial release; and, third, that
the defendant committed an offense, in this case the
retaliation, while on pretrial release.

(Plea Tr. at 33:9-23.)

Second, the record demonstrates that there was an adequate
factual basis for Kerrigan's plea.  In his Motion, Kerrigan
argues that his plea lacked a factual basis because he never
expressly admitted that he assaulted Kornhaber with the "intent
to retaliate" against her for cooperating with the Government.
(Mem. in Supp. at 26-28.)  For the first time, Kerrigan alleges
that he assaulted Kornhaber because she accused him of cheating
on her, not because she was cooperating with the Government's
investigation.  (Kerrigan Declaration ("Decl.") ¶¶ 16-18.)
Kerrigan submits that because he never expressly admitted to the
intent element, Judge Forrest lacked a factual basis for
accepting his plea.  The Court, having reviewed the record,
disagrees.

16

Immediately after the Government outlined the elements of the witness retaliation charge, Kerrigan admitted that "[o]n October 16, 2017, while on pretrial release, [he] argued with [his] girlfriend Heather Kornhaber . . . [a]nd assaulted her and called her a government informant."  (Plea Tr. at 34:19-25.) Judge Forrest then asked Kerrigan, "[w]ith regard to what crime did you think she was an informant for?"  (Id. at 35:1-2.) Kerrigan responded "[t]he bank robberies."  (Id. at 35:3.)

Although Kerrigan did not expressly state that he attacked Kornhaber because she was cooperating with the Government, his allocution was sufficient to satisfy the intent element of the witness retaliation statute.  It is well established that "intent can often be proved through circumstantial evidence and the reasonable inferences drawn therefrom."  United States v. MacPherson, 424 F.3d 183, 189 (2d Cir. 2005); see also United States v. Nelson, 277 F.3d 164, 198 (2d Cir. 2002) ("[E]vidence that a victim was attacked while actually engaged in a protected activity would ordinarily be enough to send the question of activities-based intent to a jury, because such facts would afford the basis for an inference that the assailant did intend to interfere with the protected activity.").  With respect to 18 U.S.C. § 1513(b), the Second Circuit has recognized that because "direct evidence of retaliatory intent is rarely available to prosecuting attorneys, . . . courts have long since held it

17

proper for a jury to base its verdict wholly on reliable
inferences deduced from circumstantial evidence." United States
v. Brown, 937 F.2d 32, 36 (2d Cir. 1991); see also United States
v. Yi Guo Cao, 420 F. App'x 25, 27 (2d Cir. 2011) (summary
order) (concluding that circumstantial evidence was sufficient
to support inference that the defendant intended to retaliate
against the victim for assisting the government).

Here, Kerrigan's intent to retaliate could be inferred from
the fact that he believed Kornhaber was cooperating with the
Government at the time of the assault and he "called her a
government informant[,]" (Plea. Tr. at 34:24-25), during the
attack.  See United States v. Nieves, No. 19 Cr. 354 (JSR), 2021
WL 2635820, at *3 (S.D.N.Y. June 25, 2021) (finding "a
reasonable jury could have concluded that [the defendant] acted
in retaliation for [the victim's] testimony . . . [because] [the
defendant] called [the victim] a 'snitch' and a 'rat' during the
attack."); see also United States v. Cotto, No. 14 Cr. 133, 2018
WL 2410374, at *6 (W.D.N.Y. May 29, 2018) ("Once the jury
inferred that the Defendant knew [the victim] was testifying in
a federal trial, it would have had little difficulty in
reasonably inferring that the Defendant intended to assault [the
victim] for his testimony in that trial."), aff'd sub nom.
United States v. Escalera, 957 F.3d 122 (2d Cir. 2020).
Accordingly, Kerrigan's own allocution provided Judge Forrest

with a sufficient factual basis to conclude that Kerrigan

attacked Kornhaber with the intent to retaliate against her for

cooperating with the Government.  See United States v. Ward, No.

17 Cr. 171 (MPS), 2019 WL 6255198, at *11 (D. Conn. Nov. 22,

2019) (concluding that the defendant's knowledge that the victim

was a government informant supported an inference that the

defendant attacked the victim with the intent to retaliate); see

also United States v. Persico, No. 10 Cr. 147 (SLT), 2015 WL

893542, at *9 (E.D.N.Y. Mar. 2, 2015) ("In light of Second

Circuit case law holding that the requisite state of mind could

reasonably be inferred from the terms of the loans[,] . . . the

facts set forth during the plea proceeding were sufficient to

provide a factual basis for Mr. Persico's plea." (citation

omitted)), aff'd sub nom. United States v. Bombino, 732 F. App'x

44 (2d Cir. 2018).  Kerrigan's belated claim of innocence has no

impact on this conclusion.  See Maher, 108 F.3d at 1530 ("The

self-inculpatory statements [a defendant] made under oath at his

plea allocution 'carry a strong presumption of verity,' and the

court, in reviewing the belated claims of innocence, must draw

all permissible inferences in favor of the government and

against the defendant." (quoting Blackledge v. Allison, 431 U.S.

63, 74 (1977)).

    Finally, even if Kerrigan's allocution was insufficient,

Judge Forrest was free to "find the factual basis for the plea

anywhere in the record, including in "the presentence report[]
'or [any other source] appropriate in a specific case.'"  Smith,
160 F.3d at 121 (quoting Maher, 108 F.3d at 1524 (noting
district court could "rely on any facts at its disposal—not just
the admissions of the defendant")).  Here, the Government argued
during the plea hearing that Kerrigan was not entitled to
receive credit for acceptance of responsibility because of "the
obstructive conduct contained in the witness retaliation count."
(Plea Tr. at 28:11.)  At no point during the hearing did
Kerrigan contest the Government's characterization of the
assault or express confusion about the elements of the
retaliation count.  Instead, Kerrigan stated in his own words
that he assaulted Kornhaber and accused her of being an
informant for the Government during the assault.  Furthermore,
the factual statements in the PSR, which Judge Forrest adopted
without objection during the sentencing hearing, clearly
supported a finding that Kerrigan assaulted Kornhaber because
she was cooperating with the Government.  (Sent. Tr. at 12:9–11;
PSR ¶ 65.)

In sum, the record clearly demonstrates that there was a
sufficient factual basis for Judge Forrest to accept Kerrigan's
guilty plea on Count Six.  Because his guilty plea comported
with the requirements of Rule 11, his first claim fails on the
merits.

### B. Kerrigan was Properly Sentenced on All Six Counts

Kerrigan next argues that he was improperly sentenced on Counts Four, Five, and Six because Judge Forrest, on motion from the Government, dismissed the counts during the sentencing proceeding.  This claim is similarly refuted by the record.

As Kerrigan concedes, he pled guilty to all six counts of the Indictment on December 11, 2017.  (Mem. in Supp. at 56–57.) During the April 11, 2018, sentencing hearing, Judge Forrest sentenced Kerrigan on each of the six counts and stated that, with the exception of Count Six, the terms of imprisonment would run concurrently.  (Sent. Tr. at 48:6–25.)  At the end of the hearing, the Government moved to dismiss "any open counts" that remained pending against Kerrigan.  At that time, the only "open counts" were those charged in the indictments that had been filed before the third superseding Indictment was filed on October 30, 2017.  (See S0-16-CR-576; S1-16-CR-576; S2-16-CR-576.)  Judge Forrest granted the Government's application, stating "[a]ny open counts that may exist are dismissed."  (Id.)

Kerrigan's claim that Judge Forrest dismissed Counts Four, Five, and Six appears to be based on the fact that the three counts appear on the second page of his judgment of conviction under the title "Additional Counts of Conviction."  (Mot. in Supp. at 57; see also Judgment of Conviction, ECF No. 246.)  As the Government points out, however, "[i]t is clear that Counts

21

Four, Five, and Six—the 'Additional Counts of Conviction'—are contained on a second page simply because there was no[] room for them on the first page."  (Mem. in Oppo. at 16.)  The transcript of the Sentencing Hearing demonstrates that Judge Forrest sentenced Kerrigan on Counts One through Six of the Indictment and then dismissed "[a]ny open counts that may exist[.]"  (Sent. Tr. at 51:22–23.)  Because Kerrigan had already been sentenced on Counts Four through Six, they were not "open" at the time of the Government's application and were, as a result, unaffected by Judge Forrest's order.  Accordingly, contrary to Kerrigan's claims, he was not erroneously sentenced on Counts Four, Five, and Six.

### C. Kerrigan's Sentence Comports with the Eighth Amendment

Kerrigan additionally argues that his sentence of 200 months' imprisonment is so disproportionate to his crimes that it violates the Eighth Amendment's prohibition against cruel and unusual punishment.  This claim is meritless.

It is well established that "[l]engthy prison sentences, even those that exceed any conceivable life expectancy of a convicted defendant, do not violate the Eighth Amendment's prohibition against cruel and unusual punishment when based on a proper application of the Sentencing Guidelines or statutorily mandated consecutive terms."  United States v. Yousef, 327 F.3d

56, 163 (2d Cir. 2003). "The Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime, and, with the exception of capital punishment cases, successful Eighth Amendment challenges to the proportionality of a sentence have been exceedingly rare." Id. (internal citations omitted).

Here, Kerrigan's sentence was the result of a proper application of the Guidelines. During the sentencing hearing, Judge Forrest determined that Kerrigan's offense level was 34 and that his Criminal History Category was I, resulting in a Guidelines range of 151 to 188 month's imprisonment. (Sent. Tr. at 26:5-6.) Judge Forrest then granted the Government's request for an upward departure of 12 months, or one offense level, based on the serious physical injuries Kerrigan inflicted on Kornhaber. As the Second Circuit noted in support of its conclusion that Kerrigan's "sentence was substantively reasonable[,]" Kerrigan played "a significant role in the burglaries . . . [and] violently retaliate[d] against a witness, accusing his girlfriend of 'ratting him out, punching and chocking her, and threatening to kill her and her nine-year-old son." Kerrigan 787 F. App'x at 771; see also United States v. Rizzo, 349 F.3d 94, 97-98 (2d Cir. 2003) ("[A] district court's choice between two permissible views of the evidence [when applying the Sentencing Guidelines] cannot be clearly

erroneous."). Because Kerrigan's sentence was the result of a proper application of the Guidelines and appropriately reflected the seriousness of his offenses, Kerrigan is unable to demonstrate that his sentence is so disproportionate that it runs afoul of the Eighth Amendment. See Peralta v. United States, No. 19 Cr. 135 (VEC), 2021 WL 5815745, at *4 (S.D.N.Y. Dec. 6, 2021) ("Even a very long prison sentence (33 months for conspiracy to commit robbery does not constitute a 'long' prison sentence) does not violate the Eighth Amendment prohibition against cruel and unusual punishment when it is 'based on a proper application of the Sentencing Guidelines.'" (quoting United States v. Kopp, 712 F. App'x 117, 119 (2d Cir. 2018))). Kerrigan's Eight Amendment claim is, therefore, rejected. See Edwards v. Marshall, 589 F. Supp. 2d 276, 290 (S.D.N.Y. 2008) ("A reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate because the decision of a sentencing court is entitled to substantial deference." (cleaned up)).

### D. Ineffective Assistance of Counsel

As noted previously, Kerrigan also argues that his conviction must be vacated because his trial counsel and appellate counsel were constitutionally ineffective. Specifically, he contends that his trial counsel, Patrick

24

Parrotta ("Parrotta"), was ineffective because he (1) failed to obtain a plea agreement from the Government, (2) failed to object to Judge Forrest's acceptance of his guilty plea with respect to Count Six, and (3) failed to object to the loss calculation in his PSR.  As for his appellate counsel, Matthew Galluzzo ("Galluzzo"), Kerrigan argues that his performance was constitutionally deficient because he failed to raise any of the aforementioned issues on appeal.  In its Memorandum in Opposition, the Government argues that Kerrigan's claims are meritless because he is unable to establish that his counsels' performance fell "below an objective standard of reasonableness" or that he suffered "prejudice from the failures of which [he] complains."  (Mem. in Oppo. at 18.)  The Court agrees with the Government.

### 1. Applicable Law

To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) his "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 669, 688-94 (1984).  Under the first prong of the Strickland test, "the proper standard for attorney performance is that of reasonably effective assistance."  Id. at 687.  In applying this standard,

25

the "court 'must indulge a strong presumption that counsel's
conduct falls within the wide range of reasonable professional
assistance,' bearing in mind that '[t]here are countless ways to
provide effective assistance in any given case' and that '[e]ven
the best criminal defense attorneys would not defend a
particular client in the same way.'" United States v. Aguirre,
912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 466 U.S.
at 689).  The burden is on the defendant to show that his
counsel "'made errors so serious that counsel was not
functioning as the 'counsel' guaranteed the defendant by the
Sixth Amendment.'"  Harrington v. Richter, 562 U.S. 86, 105
(2011) (quoting Strickland, 466 U.S. at 687).

Under the second prong of the Strickland test, "[i]t is not
enough for the defendant to show that the errors had some
conceivable effect on the outcome of the proceeding. . . .  The
defendant must show that there is a reasonable probability that,
but for counsel's unprofessional errors, the result of the
proceeding would have been different."  Strickland, 466 U.S. at
693-94.  When the defendant's claim centers on a plea of guilty,
the defendant "'must show that there is a reasonable probability
that, but for counsel's errors, he would not have pleaded guilty
and would have insisted on going to trial.'"  Gonzalez v. United
States, 722 F.3d 118, 130 (2d Cir. 2013) (quoting Hill v.
Lockhart, 474 U.S. 52, 59 (1985)).

Although originally formulated to evaluate the performance of trial counsel, the Strickland test applies to claims of ineffective assistance of appellate counsel.  See Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992) ("[O]ur Circuit has [] adopted the Strickland two-prong test in assessing the effectiveness of appellate counsel.").  To prevail on a claim of ineffective assistance of appellate counsel, a defendant must establish that "appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal," and that absent counsel's deficient performance, "there was a reasonable probability that defendant's appeal would have been successful." Hicks v. Ercole, No. 09 Civ. 2531 (AJN), 2015 WL 1266800, at *21 (S.D.N.Y. Mar. 18, 2015).

### 2. Analysis

#### a. Failure to Obtain a Plea Agreement

Kerrigan first argues that his trial counsel's performance was constitutionally deficient because he failed to successfully negotiate a plea agreement with the Government and improperly advised him to plead guilty without the benefit of such an agreement.  These claims are belied by the record and directly contradicted by statements in Parrotta's affidavit.

With respect to the plea negotiations, the record clearly demonstrates that Parrotta engaged in thorough negotiations with the Government.  Although Kerrigan now claims that he "was never

advised by [his] attorney as to why [he] was not being offered
any type of plea agreement from the Government," (Decl. ¶ 5),
both the Government and Parrotta explained, on the record, and
in Kerrigan's presence, that the Government would not extend him
a plea offer unless he assisted in the recovery of the stolen
property.  During the Plea Hearing, the Government stated:

> There are unrecovered proceeds in this case, a large
> amount of unrecovered proceeds, and so by retaining
> those proceeds, the defendant has not fully accepted
> responsibility. Again, that is the government's
> position, and it is not subject to an agreement
> between the government and the defendant, and it is
> ultimately up to the Court. But the government's
> position is that in continuing to retain those
> proceeds, he has not fully accepted responsibility.

(Plea Tr. at 29:25-30:7.)  Similarly, during the Sentencing
Hearing, Parrotta explained why he believed the Government had
not offered Kerrigan a plea agreement and why, in his view, it
was not in Kerrigan's best interest to continue to pursue one.

> It was very clearly communicated to me and other
> counsel that unless one of the co-defendants in this
> case came in and completely provided information to
> the satisfaction of the government, they were not
> getting the acceptance points.  I do not feel, and I
> have a good faith basis for this, that we physically
> are ever going to be able to come in and satisfy the
> government, even if we did proffer or discuss with
> them after the guilty plea the whereabouts of
> property. . . . I felt, and I discussed this with my
> client, that there was nothing that we were ever going
> to be able to do in proffering or discussing
> truthfully with the government to be able to convince
> them that that was a truthful and forthcoming
> discussion or representation for my client.

(Sent. Tr. at 21:18–22:15.)  Additionally, in his affidavit,
Parrotta explicitly states that he "attempted many times to
obtain a plea agreement with the Government."  (Parrotta Aff. ¶
4.)  He further notes, as he did during the Sentencing Hearing,
that during his "attempt[] to reach a plea agreement with the
Government, [he] was informed by [the Government] that unless
[Kerrigan] provided information to assist the Government in
making an accounting of what happened to the stolen property[,]
no plea agreement would be offered[.]"  (Id.)  As the record
makes clear, Parrotta diligently pursued a plea agreement with
the Government and explained to Kerrigan why an agreement was
not forthcoming.

    Moreover, even if Kerrigan's allegations concerning the
plea negotiations were true, they would not support a claim of
ineffective assistance.  As a general matter, criminal defense
attorneys are not obligated to pursue plea negotiations with the
government.  See United States v. Morel, No. 07 Cr. 4899 (DC),
2010 WL 2900318, at *4 (S.D.N.Y. July 22, 2010) (citation
omitted).  "The appropriateness of pursuing a plea agreement
with the government is a strategic decision ordinarily not
second-guessed by the court."  Id.  Here, as Parrotta explained
during the Sentencing Hearing, he did not believe that Kerrigan
could "satisfy the [G]overnment" and, as a result, he advised
Kerrigan that he should appeal to the Court for credit for

acceptance of responsibility.   (Sent. Tr. at 22:1-7.)   This type of decision is the sort of "strategic [choice] that falls within the range of reasonable professional assistance." <u>United States v. Peterson</u>, 896 F. Supp. 2d 305, 318 (S.D.N.Y. 2012).

Kerrigan next argues that he agreed to plead guilty without the benefit of a plea deal because Parrotta advised him that Judge Forrest "would divert from the Probation recommendation and that he would get a lesser sentence than was recommended." (Decl. ¶ 7.)   This claim is also belied by the record.   In his affidavit, Parrotta expressly states that "[a]t no time did [he] ever advise or predict to [Kerrigan] that Judge Forrest would divert from the Probation Department's recommendation and that he would get a lesser sentence than was recommended by either Probation or the Government."   (Parrotta Aff. ¶ 11.)   During the Plea Hearing, Judge Forrest asked Kerrigan directly if "anybody promised you what your sentence will be if you plead guilty?" (Plea Tr. at 24:10-11.)   In response, Kerrigan stated "[n]o. Absolutely not your Honor."   (<u>Id.</u> at 24:12.)

Additionally, even if the Court were to discredit Parrotta's affidavit and Kerrigan's statements during the Plea Hearing, "it is well-established that defense counsel's predictions of what a potential sentence might be cannot form the basis of an ineffective assistance of counsel claim." <u>Ferreira-Rosario v. United States</u>, No. 19 Civ. 3175 (NRB), 2021

WL 2418781, at *3 (S.D.N.Y. June 14, 2021) (citing <u>United States</u> <u>v. Sweeney</u>, 878 F.2d 68, 70 (2d Cir. 1989) (per curiam)).  A defendant asserting such a claim is incapable of establishing prejudice because "[w]hatever misconceptions [the defendant] may have entertained prior to his plea hearing, [the court] impressed on [the defendant] at his plea hearing . . . that [the court] alone determined his sentence . . . ." <u>Sarder v. United</u> <u>States</u>, No. 11 Civ. 7873 (NRB), 2012 WL 1314159, at *9 (S.D.N.Y. Apr. 17, 2012); <u>see also</u> <u>Sweeney</u>, 878 F.2d at 70 ("[A] defendant [is] not entitled to withdraw a guilty plea simply because his attorney erroneously predicted his sentence. . . . . [W]e do not believe that appellant may avoid the effect of our precedents by characterizing a mistaken prediction as ineffective assistance of counsel." (internal citations and quotation marks omitted)). Accordingly, Kerrigan's claim that Parrotta was ineffective with respect to his plea negotiations is denied as meritless.

### b. Failure to Object to Guilty Plea on Count Six

Kerrigan next argues that Parrotta was ineffective because he failed to challenge Kerrigan's guilty plea to Count Six and the consecutive 12-month sentence that was imposed in connection with that count.  This claim is meritless because, as discussed previously, Kerrigan's guilty plea on Count Six was sufficient. See <u>United States v. Blackledge</u>, 721 F. App'x 41, 44 (2d Cir.

2018) (summary order) ("[The defendant] cannot fault counsel for failing to object to the acceptance of the plea, given that the procedure of the plea hearing was not deficient and attorneys cannot be required to lodge meritless objections."). Because any challenge to the sufficiency of the plea would have been denied, Parrotta's failure to raise such a challenge does not support a claim of ineffective assistance. See United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance"), cert. denied, 516 U.S. 927 (1995).

### c. Failure to Object to Loss Calculation Contained in the PSR

Finally, Kerrigan argues that Parrotta was constitutionally ineffective because he failed to challenge the loss calculation contained in the PSR, which informed Judge Forrest's Guidelines calculation during the Sentencing Hearing. As discussed above, the PSR stated that Kerrigan and his co-conspirators were "responsible for a total loss of at least $20,430,755.38." (PSR at p. 31.) During the Sentencing Hearing, Judge Forrest found that the loss amount resulted in an "offense level increase of 20." (Sent. Tr. at 15:1-3.) Kerrigan argues that Parrotta was ineffective because he failed to challenge the loss calculation even though "no reliable evidence was ever presented as to the amount of loss." (Mem. in Supp. at 49.) Kerrigan contends that

Parrotta erred in not requesting "a <u>Fatico</u> hearing, which would have put the amount of loss to a reasonable offer of proof . . . ." (<u>Id.</u> at 50.)

The Second Circuit has previously recognized that "counsel may properly decide to forego a <u>Fatico</u> hearing as a 'matter of strategy,' and we presume that such a strategy is sound absent a strong showing to the contrary." <u>United States v. Santiago</u>, 330 F. App'x 234, 238-39 (2d Cir. 2009) (summary order) (citation omitted); <u>see also</u> <u>United States v. Lee</u>, 818 F.2d 1052, 1056 (2d Cir. 1987) (upholding counsel's decision not to pursue a <u>Fatico</u> hearing "as a matter of strategy").  Indeed, "[c]ourts within this circuit have repeatedly found that counsel's decision whether or not to request a <u>Fatico</u> hearing is a 'strategic [choice] that falls within the range of reasonable professional assistance.'"  <u>Messina v. United States</u>, No. 11 Cr. 31 (KAM), 2020 WL 4194533, at *19 (E.D.N.Y. July 21, 2020) (<u>quoting</u> <u>Peterson</u>, 896 F. Supp. 2d at 318).

Here, Parrotta's decision to forgo a <u>Fatico</u> hearing was reasonable and does not give rise to a claim of ineffective assistance.  Parrotta's goal during the Sentencing Hearing was to convince Judge Forrest to grant Kerrigan credit for acceptance of responsibility and deny the Government's request for an upward departure under U.S.S.G. § 5k2.2.  As Parrotta notes in his affidavit, "[a] <u>Fatico</u> hearing presenting

additional evidence of additional victim's loss risked providing
the Court with more cumulative factors to consider in
formulating a sentence based not only on economic loss but also
based on a loss that was more than just financial." (Parrotta
Aff. ¶ 13.)  By avoiding a <u>Fatico</u> hearing, Parrotta reasonably
sought to avoid highlighting damaging evidence of the loss
amount.  Moreover, any effort to dispute the loss amount would
have undermined Parrotta's argument that Kerrigan had accepted
responsibility for his actions.  Accordingly, Parrotta's
decision to forgo a <u>Fatico</u> hearing did not fall below an
objective standard of reasonableness.  See <u>Lee</u>, 818 F.2d at
1056.

### d. Ineffective Assistance of Appellate Counsel

Kerrigan's final claim in support of the instant Motion is
that his Appellate Counsel, Matthew Galluzzo, was
constitutionally ineffective for failing to raise certain
arguments on direct appeal.  Specifically, Kerrigan contends
that Galluzzo erred in failing to argue that (1) Kerrigan's
sentence was imposed in violation of the Eighth Amendment; (2)
Kerrigan was improperly sentenced on Counts Four, Five, and Six;
and (3) the loss calculation applicable to Kerrigan was not
properly supported.  Kerrigan also argues that Galluzzo was
ineffective because he failed to file a motion for rehearing

34

pursuant to Federal Rule of Appellate Procedure 40.  These
claims are meritless.

"As in all ineffective assistance of counsel claims, the
movant must overcome a strong presumption that [appellate]
counsel exercised reasonable professional judgment: 'Appellate
counsel does not have a duty to raise all colorable claims on
appeal; rather, counsel should use reasonable discretion to
determine which claims constitute a defendant's best arguments
for obtaining a reversal of a conviction.'"  Figueroa v. United
States, No. 17 Civ. 9505, 2019 WL 6338420, at *3 (S.D.N.Y. Nov.
26, 2019) (quoting Forte v. LaClair, 354 F. App'x 567, 569 (2d
Cir. 2009)).  "[T]o prevail on an ineffective assistance of
appellate counsel claim, [the defendant] must show that his
lawyer 'omitted significant and obvious issues while pursuing
issues that were clearly and significantly weaker.'"  Roberts v.
Griffin, No. 16 Civ. 5970 (ENV), 2019 WL 456179, at *10
(E.D.N.Y. Feb. 5, 2019) (quoting Clark v. Stinson, 214 F.3d 315,
322 (2d Cir. 2000)).  Counsel's "failure to include a meritless
argument[,]" however, "does not fall outside the wide range of
professionally competent assistance to which [a] [defendant]
[is] entitled."  Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir.
2001) (internal quotation marks and citation omitted).

Here, Kerrigan is unable to establish that Galluzzo
"omitted significant and obvious issues" on appeal because the

allegedly overlooked claims are meritless.  As discussed
previously, Kerrigan was properly sentenced on Counts Four,
Five, and Six, and Judge Forrest's sentence was not "grossly
disproportionate" to the crimes in violation of the Eighth
Amendment.  Additionally, the loss amount in the PSR was not
disputed by Parrotta and Judge Forrest properly relied on the
PSR when calculating the applicable Guidelines range.  See
United States v. Highsmith, 688 F.3d 74, 78 (2d Cir. 2012)
("[B]y adopting the facts as outlined in the PSR the district
court did not commit error, plain or otherwise, that would
affect the sentence's procedural or substantive fairness.").
Accordingly, because the claims identified by Kerrigan lack
merit, Galluzzo was not ineffective for failing to raise the
claims on direct appeal.  See Artuz, 269 F.3d at 99, n.10
("Because the [defendant's] claim was meritless, [his] trial
counsel was not ineffective for failing to raise it . . . [a]nd
[his] appellate counsel was not ineffective for failing to raise
the ineffectiveness of trial counsel.").

     Finally, Kerrigan's claim concerning Galluzzo's failure to
file a petition for Panel Rehearing pursuant to Rule 40 of the
Federal Rules of Appellate Procedure is also meritless.  In his
Motion, Kerrigan argues that Galluzzo should have filed a
petition for rehearing on the grounds that the Second Circuit
failed to address the disparity between Kerrigan's sentence and

the sentences of his co-defendants.  Contrary to Kerrigan's claim, however, the Second Circuit did address the issue of disparity, holding that Judge Forrest was permitted, but not required "to consider sentencing disparity among co-defendants" pursuant to 18 U.S.C. § 3553(a)(6).  Kerrigan 787 F. App'x at 771.  The Second Circuit additionally noted that Kerrigan "was not similarly situated to his co-conspirators; in addition to playing a significant role in the burglaries, he was the only defendant to violently retaliate against a witness . . . ."  Id. In so far as Kerrigan argues that the Second Circuit failed to address his claim that his sentence was constitutionally disproportionate to his crime, this claim would have also been rejected.  See Thomas v. Larkin, 12 Civ. 2899 (NGG), 2013 WL 5963133, *9 (E.D.N.Y. Nov. 7, 2013) ("[S]uccessful Eighth Amendment challenges to the proportionality of a sentence have been exceedingly rare." (internal quotation marks and citation omitted)).  Accordingly, because any Rule 40 petition would have been frivolous, Galluzzo's failure to file the petition does not constitute ineffective assistance.  See United States v. Nersesian, 824 F.2d 1294, 1322 (2d Cir. 1987) ("[F]or purposes of effective assistance, not every possible motion need be filed, but rather, only those having a solid foundation. Counsel certainly is not required to engage in the filing of futile or frivolous motions.").

### e. An Evidentiary Hearing is Not Warranted

In his Motion, Kerrigan argues that an evidentiary hearing must be held on his ineffective assistance of counsel claims. Under § 2255(b), the district court is required to hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); see Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013).  The Court is mindful that "[a] defendant seeking a hearing on an ineffective assistance of counsel claim need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim."  Raysor, 647 F.3d at 494 (internal citation and quotation marks omitted). Nevertheless, Second Circuit case law permits the district court to choose "a 'middle road' of deciding disputed facts on the basis of written submissions."  Id. (quoting Pham v. United States, 317 F.3d 178, 184 (2d Cir. 2003)).

Here, Kerrigan's various claims are refuted by the record and contradicted by the sworn affidavits of Parrotta and Galluzzo.  Accordingly, no hearing is necessary.  See Wang v. United States, 458 F. App'x 44, 46 (2d Cir. 2012) (summary order) (concluding it was reasonable for court to decide petition on written record where petitioner's allegations were "incredible in and of themselves" and were contradicted by other

affidavits and transcript of plea hearing); see also United States v. Dukagjini, 198 F. Supp. 2d 299, 302 (W.D.N.Y. 2002) ("[The defendant's] claims of ineffective assistance are contradicted by the record, including his own sworn statements at the Rule 11 proceeding and, therefore, no factfinding hearing is necessary."); Berrios v. United States, No. 07 Civ. 4441 (JS), 2009 WL 2226757, at *3 (E.D.N.Y. July 23, 2009) ("When an attorney's affidavit credibly contradicts a habeas petitioner's ineffective assistance of counsel claim, the Court is entitled to deny the petition without holding an evidentiary hearing.").

**IV. Conclusion**

For the reasons set forth above, Kerrigan's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED.  The Court declines to issue a certificate of appealability, as Kerrigan has not made a substantial showing of a denial of a constitutional right.  See Matthews v. United States, 682 F.3d 180, 185 (2d Cir. 2012).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and permission to proceed in forma pauperis is DENIED.  The Clerk of Court is respectfully directed to terminate the motion docketed at No. 16 Cr. 576, ECF No. 302, and to close the case at No. 20 Civ. 1493.

**SO ORDERED.**

Dated:   New York, New York
         August 8 , 2022

John F. Keenan
United States District Judge